**FILED**
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ **FEB 2 4 2020** ★

**BROOKLYN OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
POOJA BANSAL AND GLENDA VILLAREAL
GARCIA,

                                        Plaintiffs,

          -against-

CITY OF NEW YORK AND NEW YORK CITY
EMPLOYEES' RETIREMENT SYSTEM
(NYCERS),

                                        Defendants.
-----------------------------------------------------------------X

**REPORT & RECOMMENDATION**
**18 CV 878 (ENV)(LB)**

**BLOOM, United States Magistrate Judge:**

   *Pro se* Plaintiffs, Pooja Bansal and Glenda Villareal Garcia (collectively "plaintiffs"),[1]

bring this action against the City of New York and New York City Employees' Retirement System

("NYCERS") (collectively "defendants") pursuant to Title VII of the Civil Rights act of 1964

("Title VII"), 42 U.S.C. §§ 2000e, alleging that defendants unlawfully discriminated against them

on the basis of their race and national origin and retaliated against them for complaining about

discrimination. Defendants now move for summary judgment pursuant to Rule 56 of the Federal

Rules of Civil Procedure. ECF No. 37. The Honorable Eric N. Vitaliano referred defendants'

motion for summary judgment to me for a report and recommendation in accordance with 28

U.S.C. § 636(b). For the following reasons, defendants' motion for summary judgment should be

granted.

---

[1] While plaintiffs are proceeding *pro se*, plaintiffs are attorneys and thus are not entitled to the liberal reading that *pro se* litigants are generally afforded. Tracy v. Freshwater, 623 F.3d 90, 101–102 (2d Cir. 2010); Bliven v. Hunt, No. 05 CV 4852, 478 F. Supp. 2d 332, 334 (E.D.N.Y. 2007) (finding experienced attorney not entitled to degree of liberality given to non-attorney *pro se* plaintiffs) (citations omitted); Maloney v. Cuomo, 470 F. Supp. 2d 205, 209 (E.D.N.Y. 2007) ("Although the Court normally will hold the pleadings of a *pro se* plaintiff to a less rigorous standard of review than pleadings drafted by counsel, as an experienced attorney the plaintiff's papers in this case are not entitled to such special consideration") (citing Goel v. United States DOJ, No. 03 Civ. 0579, 2003 WL 22047877, at *1 (S.D.N.Y. Aug. 27, 2003)).

## BACKGROUND

The facts are derived from defendants' Rule 56.1 statement, plaintiffs' Rule 56.1 counterstatement,[2] defendants' response to plaintiffs' 56.1 counterstatement, and the parties' declarations and exhibits. The facts are considered in the light most favorable to the non-moving party.

### *Plaintiffs' Employment with NYCERS*

This case presents the unfortunate, but far too common tale of how two employees became dissatisfied and unhappy at their jobs when they believed a new employee was being treated more favorably than they were. Plaintiffs are both Asian American attorneys who worked for defendants until they resigned in 2015. The newly employed attorney was not Asian American.

Plaintiff Garcia is Asian American and of Filipino Origin. Pls.' Counterstatement at 22 ¶ 1. Plaintiff Garcia commenced her employment with NYCERS as an Agency Attorney, Level 1 on September 8, 2009. Defs.' 56.1 Statement ¶ 5. Prior to joining NYCERS, plaintiff Garcia had no City or pension law experience. Id. at ¶¶ 6–7. On March 11, 2012, on the recommendation of General Counsel Karen Mazza ("Mazza"), plaintiff Garcia was promoted to Agency Attorney, Level 2, id. at ¶ 9, and on June 14, 2013, plaintiff Garcia was promoted to Agency Attorney, Level 3, also on the recommendation of Ms. Mazza. Id. at ¶ 11. Plaintiff Garcia's salary was $78,563

---

[2] The facts in plaintiffs' 56.1 counterstatement are not all supported by direct citations to admissible evidence. See Pls.' 56.1 Counterstatement at 22–27. "[W]here there are no citations or where the cited materials do not support the factual assertions in the statements, the Court is free to disregard the assertion." Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001) (internal alterations omitted) (collecting cases); see also Fiedler v. Incandela, No. 14 CV 2572, 2016 WL 7406442, at *6 (E.D.N.Y. Dec. 6, 2016) ("The court need not consider as true any fact that is not supported by admissible evidence." (citing Whitehurst v. 230 Fifth, Inc., 998 F. Supp. 2d 233, 260 (S.D.N.Y. 2014))); Suares v. Cityscape Tours, Inc., No. 11 Civ. 5650, 2014 WL 969661, at *2 (S.D.N.Y. Mar. 12, 2014), aff'd, 603 Fed. Appx. 16 (2d Cir. 2015) (where plaintiff failed to provide citations to the record, the Court deemed defendants' 56.1 statement of material facts "admitted for purposes of the motion") (citing Local Rule 56.1). The Court has thoroughly reviewed the record, and to the extent that plaintiffs' facts as set forth in their 56.1 Counterstatement are supported by the record, they have been considered.

and within the salary range for an Agency Attorney, Level 3 in 2013, which was between $66,970 and $98,864. Id. at ¶¶ 11–12; Defs.' Ex. E; Defs.' Ex. H.

As an Agency Attorney, Level 3, plaintiff Garcia's job duties included "review[ing] legal documents for completeness and legal authority, us[ing] legal resources to research pension related issues, review[ing] and respond[ing] to domestic relations orders, represent[ing] the agency in disciplinary hearings, draft[ing] contracts, maintain[ing] NYCERS' document retention policy, and writ[ing] reports and memoranda to agency staff explaining or clarifying legal issues. Id. at ¶¶ 14–15; Declaration of Karen Mazza ("Mazza Decl.") ¶ 6. Ms. Mazza also asked plaintiff Garcia to serve as the EEO Officer for NYCERS. Id. at ¶ 16; Mazza Decl. ¶ 7. For the duration of plaintiff Garcia's employment with NYCERS, plaintiff Garcia was assigned to work in a cubicle. Id. at ¶ 17.

Plaintiff Bansal is Asian American of Indian Origin. Pls.' Counterstatement at 22 ¶ 2. Plaintiff Bansal commenced her employment with NYCERS as an Agency Attorney, Level 3 on August 18, 2013. Defs.' 56.1 Statement ¶ 27. Plaintiffs' salary was $79,349.[3] Plaintiff Bansal's job duties included drafting and negotiating contracts, reviewing powers of attorney, guardianship documents, domestic relations orders, as well as dealing with disciplinary actions related to employees, drafting procedural memos, and investigating allegations of fraud. Pls.' Counterstatement ¶ 29; Defs.' 56.1 Statement ¶ 29; Mazza Decl. ¶ 12. In addition to these duties,

---

[3] Plaintiffs dispute that their starting salaries were $78,563 and $79,349 respectively and state instead that their salaries were $77,015. See Pls.' Counterstatement ¶¶ 11, 27. Plaintiffs cite to plaintiffs' Exhibit E, which consists of evaluations and a salary chart reflecting the hiring rate, incumbent rate, and max rate from February 18, 2008 to February 18, 2009. Plaintiffs' Exhibit E; however, does not prove what plaintiff Garcia or plaintiff Bansal's starting salaries were in 2013. Defendants' Exhibits E and M provide a "Job/Salary History" for plaintiff Garcia and plaintiff Bansal. Defendants' exhibits reflect that effective June 30, 2013, plaintiff Garcia's salary was $78,563, and effective August 19, 2013, plaintiff Bansal's salary was $79,349. See Defs.' Exs. E, M. Plaintiffs' assertions that their starting salaries were $77,015 should not be credited in light of defendants' exhibits. See Scott v Harris, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record . . . a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.") In any event, this fact is not material to the outcome of the instant motion.

plaintiff Bansal was the Coordinator of the Language Access Program as well as NYCERS' Chief Contracting Officer. Id. at ¶¶ 30, 32. Like plaintiff Garcia, plaintiff Bansal was assigned to a cubicle for the duration of her employment with NYCERS. Plaintiff Bansal testified that with the exception of the General Counsel, all Agency Attorneys worked in cubicles. Id. at ¶ 33. Plaintiff Bansal testified that when she began her employment with NYCERS, she inquired about receiving an office, but understood from Ms. Mazza that it was customary for Agency Attorneys to work in cubicles. Garcia Dep. 30:20–31:21.

Illyse Sisolak, a Caucasian, non-Asian woman, joined the New York City Law Department as an Assistant Corporation Counsel in the Pensions Division from September 2006 to October 2011; joined the Administrative Law Division between October 2011 and October 2013; and rose to Senior Counsel in the Administrative Law Division from October 2013 where she remained until her employment with NYCERS in 2014. Defs.' 56.1 Statement ¶¶ 36, 40. Ms. Sisolak was involved in a variety of pension litigation with the Law Department, and throughout her time with the Law Department, Ms. Sisolak represented NYCERS in litigation, which is how she became acquainted with Ms. Mazza. Id. at ¶ 37; Mazza Decl. ¶ 15. On March 3, 2014, Ms. Sisolak commenced her employment with NYCERS as an Agency Attorney, Level 3, with a salary of $98,000. Id. at ¶ 40. Ms. Sisolak was paid this salary based on her eight years of pension litigation experience at the time of her hire, and her salary was within the range for an Agency Attorney, Level 3. Id. at ¶¶ 42, 43; Mazza Decl. ¶ 22.[4] Ms. Sisolak's job duties included reviewing legal documents for completeness and legal authority, using legal resources to research pension related

---

[4] Plaintiffs dispute this statement and state "See Federal Complaint of instant matter filed with Eastern District of New York, Docket #1.") It is undisputed that $98,000 was near the top of the range for an Agency Attorney, Level 3. See Defs.' Ex. H. The Court notes that in response to defendants' claim that Ms. Sisolak was paid a salary commensurate with her experience, plaintiffs testified that Ms. Sisolak's pension experience was limited to pending litigation, which is only a preferred skill for the relevant job description of an Agency Attorney, Level 3. See Bansal Dep. 40:1–42:4; Garcia Dep. 45:11–15.

issues, reviewing and responding to Domestic Relations Orders, representing the agency in disciplinary hearings, and drafting contracts. Id. at ¶ 41. Ms. Sisolak was given an office to work in, not a cubicle. Id. at ¶ 45. Plaintiff Garcia was unaware of how Ms. Sisolak came to be assigned an office to work in, but stated she was given an office upon her hire. See Garcia Dep. 47:19–47:21.[5] Plaintiff Bansal testified that when she asked Ms. Sisolak how she came to have an office, Ms. Sisolak told her that she had asked Ms. Mazza for an office. See Bansal Dep. 50:19–23. Plaintiffs state that by giving Ms. Sisolak an office, it appeared that Ms. Sisolak had more authority than plaintiffs. Pls.' 56.1 Counterstatement at 24 ¶ 15; Bansal Dep. 91:13–25.[6]

*Plaintiffs' Wage Disparity Claim and Request for a Salary Increase*

In early 2015, plaintiffs learned that Ms. Sisolak's salary was $98,000 a year by reviewing the SeeThroughNY Website, which reflected salaries for employees of the City of New York. Defs.' 56.1 Statement ¶ 46; Bansal Dep. 37:1–20; Garcia Dep. 38:9–16.

On March 16, 2015, plaintiff Garcia emailed Aldona, a member of her union, on behalf of herself and plaintiff Bansal, about filing a possible grievance, and she requested guidance regarding their rights. Id. at ¶ 81. The email stated, "[m]y colleague and I are both agency attorneys level 3. Another attorney was hired a year ago as a level 3 and is receiving a significantly higher salary than me and my colleague, about 27 percent more. We only discovered this wage disparity though SeeThroughNy." See Garcia Dep. 115:2–10. Plaintiff Garcia further explained that she and plaintiff Bansal felt they were treated unfairly by being assigned cubicles while the other attorney was given an office. Defs.' 56.1 Statement ¶ 82. Aldona replied to plaintiffs, "I'm sorry to hear that you're going through this, the agency can hire anyone they want at any salary they want as

---

[5] Plaintiff Garcia was on maternity leave when Ms. Sisolak was hired. Garcia Dep. 47:20–48:1.
[6] Defendants object to this fact as not supported by admissible evidence. Defs.' Resp. to Pls.' 56.1 Counterstatement ¶ 15.

long as they post the job for anyone to apply and as long as the hiring is the maximum rate specified within our contract." Garcia Dep. 115:12–18. Aldona further stated, "this matter is not contractual, it is not grievable. If you have some basis in believing this mater [*sic*] may be an EEO matter, then by all means file an EEO complaint with either your agency or the State Division of Human Rights." Garcia Dep. 115:20–24; Defs.' 56.1 Statement ¶ 83.

On March 27, 2015, plaintiffs submitted separate letters to Ms. Mazza, requesting an increase in their salaries. Plaintiffs cited another Agency Attorney, Level 3,[7] who was being compensated at a higher rate than plaintiffs, as well as their work responsibilities and assignments that they believed supported their requests for increases in their respective salaries. See Pls.' Exs. R, S. Following their requests, Ms. Mazza met with plaintiffs separately and informed plaintiffs that their salaries were commensurate with their duties and experience. Defs.' 56.1 Statement ¶¶ 54–55; Mazza Decl. ¶¶ 25–7.

Following plaintiffs' requests for a salary increase, plaintiffs allege that there was a change in their assignments and that they were "given fewer and less important work."[8] Id. at ¶ 57; Compl. at 5. Moreover, plaintiffs allege that "Ms. Mazza invited Ms. Sisolak to attend an out of state pension conference which previously only general counsel could attend";[9] "Ms. Sisolak was the only attorney invited to attend a city-wide training event, which in previous years, the entire Legal department was invited to attend";[10] "Ms. Mazza invited Ms. Sisolak to attend city-wide

---

[7] Neither letter cites Ms. Sisolak by name. See Pls.' Exs. R, S.

[8] Plaintiff Bansal testified that after her letter and meeting with Ms. Mazza, she no longer received new assignments. For instance, plaintiff states that a disciplinary action assignment was given to another attorney, Cassandra Benito, and high-level contracts, which had been assigned to her in the past, were no longer assigned to her. Bansal Dep. 65:1–25.

[9] Plaintiffs state that Ms. Sisolak attended the National Association of Public Pension Attorney's conference in February, which they believed to be only for General Counsel. See Bansal Dep. 74:13–75:25; Garcia Dep. 72:1–74:16; Defs.' 56.1 Statement ¶¶ 57–60.

[10] Plaintiff Garcia testified that normally all of the Agency Attorneys were invited to attend the Train the Trainer event. Garcia Dep. 77:1–78:20; Defs.' 56.1 Statement ¶¶ 63–64.

managerial meetings";[11] "Ms. Sisolak was put in charge of special projects, that were highly visible to executives and NYCERS staff";[12] "Ms. Mazza personally treated Ms. Garcia disrespectfully by reprimanding and berating her in emails";[13] "Ms. Mazza ordered her administrative assistant, Ms. Taisha Allende, to watch over Ms. Garcia and Ms. Bansal's work . . . . Ms. Mazza did not request the same actions be taken against Ms. Sisolak." See Compl. at 5.[14]

Also following plaintiffs' requests for a salary increase, plaintiff Bansal mistakenly received an email from Ms. Allende on April 3, 2015 (intended for Ms. Mazza), which stated, "[n]ow I am sure she is going to tell Glanda [sic] im [sic] spying on their work for you and they will all get together and whisper it to Sonya and they will all hate me and its all your fault lol[.]" Defs.' 56.1 Statement ¶ 75.[15] Plaintiff Bansal subsequently reported the email as inappropriate to Ms. Mazza and Ms. Vilma Ebanks ("Ebanks"), NYCERS Director of Human Resources. Id.; Pls.' Ex. O.

On or around May 14, 2015, Bansal, Garcia, and Mazza met with Ebanks regarding plaintiffs' grievances. Garcia Dep. 66:24–67:6; Pls.' 56.1 Counterstatement at 26 ¶ 26; Bansal Aff.

---

[11] Plaintiffs testified that Ms. Sisolak attended actuarial meetings as an Agency Attorney, Level 3; however, according to plaintiff Garcia, these actuarial meetings were only for general counsel. Plaintiffs were never asked to attend these meetings. Garcia Dep. 78:25–80:19; Bansal Dep. 78:8–80:9.

[12] Plaintiff Garcia testified that Ms. Sisolak was assigned to the IT Legacy Project as a legal representative. Both plaintiffs testified that Ms. Sisolak oversaw a project regarding their NYCERS Long Island Facility. Plaintiff Garcia stated it was a "really expensive contract that entailed our Long Island or NYCERS Long Island Facility." Plaintiffs considered these projects high-profile and therefore desirable. Garcia Dep. 68:5–17; 85:16–86:25; Bansal Dep. 80:15–81:3.

[13] Plaintiff Garcia testified that in emails between herself and Ms. Mazza dated March 9, 2015 to April 6, 2015, there was a certain "tone" that "shocked" plaintiff and made her "very anxious." Plaintiff Garcia testified that in these emails, Ms. Mazza spoke to her as if she were "dumb." According to plaintiff Garcia, the emails were "berating." Garcia Dep. 92:8-102:17; Defs.' 56.1 Statement ¶¶ 77–79; Pls.' Ex. P.

[14] According to plaintiffs, Ms. Allende would routinely point out errors in their work to plaintiffs in person. Following their request for a salary increase, Ms. Allende began criticizing them in emails and copying the emails to Ms. Mazza. Garcia Dep. 103:23–105:25; Bansal Dep. 82:6–85:15; Defs.' 56.1 Statement ¶ 74.

[15] Plaintiff Bansal testified that she received this email within minutes of finishing her meeting with Ms. Mazza regarding her request for a salary increase. Bansal Dep. 60:8–13.

¶ 60; Pls.' Ex. K.[16] Plaintiff Garcia testified that the result of the meeting was "let's have more conversations about what's going on in the legal unit." Garcia Dep. 67:20–68:4.

On May 15, 2015, the day after the meeting, Ms. Sisolak was promoted to Deputy General Counsel. Defs.' Ex. Y. Plaintiffs took this action by Ms. Mazza coming on the heels of their expression of dissatisfaction with their unfair treatment as a veritable slap in the face. Moreover, plaintiff Garcia had expressed interest to Ms. Mazza in the Deputy General Counsel position sometime after September 2014, but did not have any further conversation with Ms. Mazza regarding the position. Garcia Dep. 49:19–50:16. Ms. Mazza had allegedly reported that the Agency had chosen not to fill the Deputy General Counsel position. Garcia Dep. 52:8–19. Ms. Mazza testified that, "during the first year of Ms. Sisolak's employment with NYCERS . . . she was able to handle complex matters with ease . . . which warranted the Executive Director's decision to promote her to Deputy General Counsel." Mazza Decl. ¶ 23. Plaintiff Garcia testified that Ms. Sisolak was promoted Deputy General Counsel in order for defendants to justify her more favorable treatment than plaintiffs. Defs.' 56.1 Statement ¶ 89.

### *Plaintiffs' Resignations*

After obtaining another job, plaintiff Garcia gave notice she was resigning on June 19, 2015. Id. at ¶ 90. Plaintiff then advanced her resignation date to June 5, 2015 after "circumstances that occurred on June 4, 2015." Id. at ¶ 91; Pls.' Ex. Y, Garcia Email to Ebanks. Plaintiff Garcia testified that she asked to take "a couple days" of leave in between switching jobs. Garcia Dep. 110:18–111:9. According to plaintiff Garcia, Ms. Sisolak, now Deputy General Counsel, required plaintiff to complete all of her remaining tasks before Ms. Sisolak would review her leave request,

---

[16] Defendants dispute this fact, stating that it is not supported by admissible evidence. Defs.' Resp. to Pls.' 56.1 Counterstatement ¶ 26.

which prompted plaintiff Garcia to advance her resignation date. See Garcia Dep. 111:10–112:25; Pls.' Ex. Y; Defs.' 56.1 Statement ¶¶ 90–94. Plaintiff Garcia's Exit Interview form cited "[n]o career growth or opportunities for growth; adversely affected by being skipped over for promotion; wage disparity amongst same title/same level; hostile work environment; retaliation." Defs.' 56.1 Statement ¶ 95; Pls.' Ex. I.

Plaintiff Bansal submitted her resignation to Ms. Ebanks on June 12, 2015 by letter, effective June 25, 2015. Defs.' 56.1 Statement ¶ 97; Defs.' Ex. CC. Plaintiff Bansal submitted an Exit Interview form on the date of her resignation, which stated, "I feel that I was discriminated against by receiving a lower compensation rate in relation to another co-worker, who had the same title of Agency Attorney, Level 3, with the same tasks and responsibilities." Id.; Bansal Dep. 99:14–18; Pls.' Ex. J.

## PROCEDURAL HISTORY

Plaintiff Garcia filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging defendants discriminated against her on the basis of her race and national origin and retaliated against her based on her complaints of discrimination. Plaintiff Bansal filed a charge of discrimination with the EEOC, alleging defendants discriminated against her on the basis of her race and national origin. The EEOC determined that there was reasonable cause to believe that discrimination occurred. After conciliation efforts failed, the United States Department of Justice issued plaintiffs a Notice of Right to Sue on November 17, 2017.

Plaintiffs commenced this action on February 9, 2018. ECF No. 1. Defendants answered plaintiffs' complaint on April 23, 2018. ECF No. 9. The parties completed discovery on March 29, 2019, and defendants now move for summary judgment. ECF No. 37.

# DISCUSSION

## I. Standard of Review

Summary judgment is proper where the movant demonstrates that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When assessing the merits of a summary judgment motion, the Court does not try issues of fact or make credibility judgments; the Court merely "determine[s] whether there are issues of fact to be tried." Sutera v. Schering Corp., 73 F.3d 13, 16 (2d Cir. 1995) (quoting Katz v. Goodyear Tire & Rubber Co., 737 F.2d 238, 244 (2d Cir. 1984) ); see also Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010) (noting that, on summary judgment, "the court 'may not make credibility determinations or weigh the evidence'" (emphasis omitted) (quoting Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000))). A genuine issue of fact exists where "the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a party is entitled to summary judgment, the Court considers the "pleadings, deposition testimony, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011).

The moving party bears the burden of establishing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994); Peterson v. Regina, 935 F. Supp. 2d 628, 634 (S.D.N.Y. 2013) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). Once the moving party demonstrates that there are no genuine issues of material fact, the non-moving party must put forth probative, admissible evidence and specific facts demonstrating "a genuine issue for trial." Anderson, 477 U.S. at 256–57; Giglio v. Buonnadonna Shoprite LLC,

No. 06 CV 5191, 2009 WL 3150431, at *4 (E.D.N.Y. Sept. 25, 2009) (internal quotation marks and citation omitted). Conclusory allegations or denials will not defeat summary judgment. Id. However, in reviewing the record on summary judgment, "'the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'" Sheet Metal Workers' Nat'l Pension Fund v. Vadaris Tech. Inc., No. 13 CV 5286, 2015 WL 6449420, at *2 (E.D.N.Y. Oct. 23, 2015) (quoting McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997)).

The Second Circuit has "repeatedly expressed the need for caution about granting summary judgment to an employer in a discrimination case where . . . the merits turn on a dispute as to the employer's intent." Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008). "Where an employer has acted with discriminatory intent, direct evidence of that intent will only rarely be available, so that 'affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.'" Id. (citing Gallo, 22 F.3d at 1224.) However, "when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts[.]" Scott, 550 U.S. at 380 (2007) (quoting Matsushita, 475 U.S. at 586–587 (1986)); Anderson, 477 U.S. at 252 (noting that "the mere existence of a scintilla of evidence in support of the plaintiff's position" is insufficient to defeat a defendant's summary judgment motion).

## II. Title VII Legal Framework

Title VII race and national origin discrimination claims are reviewed within the framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). "[A] plaintiff must first establish a *prima facie* case of discrimination by showing: (1) she belonged to a protected class, (2) was qualified for the position she held or sought, and (3) suffered an adverse

employment action (4) under circumstances giving rise to an inference of discriminatory intent." Fanelli v. New York, 200 F. Supp. 3d 363, 370 (E.D.N.Y. 2016) (citing Terry v. Ashcroft, 336 F.3d 128, 137–38 (2d Cir. 2003)). "This burden is minimal and does not require specific evidence of discrimination." Brown v. Baldwin Union Free Sch. Dist., 603 F. Supp. 2d 509, 514 (E.D.N.Y. 2009) (citing Joseph v. Leavitt, 465 F.3d 87, 90 (2d Cir. 2006)).

"A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." Joseph, 465 F.3d at 90 (citation and internal quotation marks omitted). The Second Circuit has provided examples of materially adverse employment actions, which include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation."[17] Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004) (alternation, citation, and internal quotation marks omitted); see also Rasko v. New York City Admin. for Children's Servs., 734 F. App'x 52, 54 (2d Cir. 2018) ("Informal discipline, criticism, or counseling does not constitute an adverse act if no change in working conditions accompanies it.").

"If the plaintiff establishes a *prima facie* case, the burden then shifts to the employer" to proffer a legitimate, nondiscriminatory reason for the adverse employment action. Whethers v. Nassau Health Care Corp., 956 F. Supp. 2d 364, 375 (E.D.N.Y. 2013), aff'd, 578 F. App'x 34 (2d Cir. 2014) (citing Leibowitz v. Cornell Univ., 584 F.3d 487, 499 (2d Cir. 2009)). "The employer's burden of showing a legitimate non-discriminatory reason for its actions is not a particularly steep hurdle." Id. "Should the employer satisfy its burden, the McDonnell Douglas framework and its presumptions and burdens disappear, leaving the sole remaining issue of 'discrimination vel non.'"

---

[17] The examples provided are illustrative, not exhaustive.

12

Fanelli, 200 F. Supp. 3d at 371 (E.D.N.Y. 2016) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000)).

To defeat an employer's proffered non-discriminatory rationale for its actions and withstand summary judgment, a plaintiff must "produce not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendants] were false, and that [discrimination] more likely than not was the real reason for the [employment action].'" Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000) (quotation omitted). See also Chan v. Donahoe, 63 F. Supp. 3d 271, 297 (E.D.N.Y. 2014) (citing Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 845 (2d Cir. 2013) ("In order to successfully rebut an employer's purported non-discriminatory reason for the employment action, the plaintiff must establish pretext."). "Thus, when the district court considers whether the evidence can support a verdict of discrimination on a motion for summary judgment, it 'must analyze the evidence, along with the inferences that may be reasonably drawn from it, and decide if it raises a jury question as to whether the plaintiff was the victim of discrimination.'" Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997) (citing Fisher v. Vassar College, 114 F.3d 1332, 1347 (2d Cir. 1997)).

### a. Race and National Origin Discrimination Under Title VII

Plaintiffs fail to establish a *prima facie* case of discrimination based on their race or national origin. Plaintiffs fail to demonstrate that they suffered adverse employment actions that give rise to an inference of discrimination. Plaintiffs assert the following adverse employment actions: plaintiffs were paid less than Ms. Sisolak; plaintiffs were assigned to cubicles while Ms. Sisolak was given an office; plaintiffs were not given equal work opportunities as Ms. Sisolak, including being excluded from high level meetings, trainings, and professional development; and

plaintiff Garcia was denied leave to accommodate Ms. Sisolak's schedule. Pls. Mem. of Law at 13–17. Each alleged adverse action is addressed below.

*Plaintiffs' Cubicle Assignments*

Plaintiffs' cubicle assignments do not rise to the level of an adverse employment action. Even though Ms. Sisolak was given an office, plaintiffs' assignment to work in cubicles is not an adverse employment action. See Fahrenkrug v. Verizon Servs. Corp., 652 Fed. Appx. 54, 56 (2d Cir. 2016) (summary order) ("being directed to switch cubicles . . . cannot plausibly be characterized as "sufficiently disadvantageous to constitute an adverse employment action[]"); Dowrich-Weeks v. Cooper Square Realty, Inc., 535 Fed. Appx. 9, 11–12 (2d Cir. 2013) (summary order) (holding that plaintiff's cubicle assignment was not a materially adverse change); Whitley v. Montefiore Med. Grp., No. 13 Civ. 4126, 2016 WL 1267788, at *7 (S.D.N.Y. Mar. 30, 2016) (holding that the defendant's "failure to provide [the plaintiff] with her own office or computer does not rise to the level of an adverse employment action within the meaning of . . . Title VII"); Klein v. N.Y. Univ., 786 F. Supp. 2d 830, 847 (S.D.N.Y. 2011) ("Undesired office assignments are not adverse employment actions.").

*Plaintiffs' Work Opportunities*

Likewise, plaintiffs' allegations regarding less favorable work opportunities do not constitute adverse employment actions. Plaintiffs allege that after they requested pay increases, there was a change in their assignments and that they were "given fewer and less important work." Defs.' 56.1 Statement ¶ 57. Plaintiffs testified that two assignments given to Ms. Sisolak should have been given to them; the IT legacy Project and an assignment regarding their Long Island Facility. Garcia Dep. 68:5–17; 85:16–86:25; Bansal Dep. 80:15–81:3. However, plaintiffs' dissatisfaction with the assignments they received without demonstrating how this materially

affected their working conditions, fails to rise to the level of an adverse employment action. "[T]he receipt of undesirable assignments must be accompanied by a material detriment to an employee's working conditions to constitute an adverse employment action." Ward v. Shaddock, No. 14 CV 7660, 2016 WL 4371752, at *5 (S.D.N.Y. Aug. 11, 2016) (quoting Henry v. N.Y.C. Health & Hosp. Corp., 18 F. Supp. 3d 396, 404 (S.D.N.Y. 2014) (collecting other cases). See also Johnson v. Morrison & Foerster LLP, No. 14 CV 428, 2015 WL 845723, at *5 (S.D.N.Y. Feb. 26, 2015) (finding plaintiffs' subjective "dissatisfaction with the work assigned," absent some evidence that the assignment materially worsened plaintiffs' working conditions, "is insufficient to make out an adverse employment action."; Katz v. Beth Israel Med. Ctr., No. 95 CV 7183, 2001 WL 11064, at *14 (S.D.N.Y. Jan. 4, 2001) (same). Thus, plaintiffs' claims regarding their work assignments after Ms. Sisolak was hired fail to establish an adverse employment action.

### Plaintiffs' Exclusion from Meetings

Plaintiffs also fail to establish that that their exclusion from certain actuarial meetings rise to the level of an adverse employment action. See Fraser v. MTA Long Island Rail Rd., 295 F. Supp. 3d 230, 260 (E.D.N.Y. 2018) (finding no adverse action where plaintiff was excluded from a meeting, but advanced no evidence that the exclusion materially affected the terms and conditions of her employment); Cotterell v. Gilmore, 64 F. Supp. 3d 406, 423 (E.D.N.Y. 2014) (finding that plaintiff's "exclusion from certain meetings plainly does not rise to an 'adverse employment action'" where the exclusion did not "affect[ ] the terms and conditions of the plaintiff's employment."); Watson v. Paulson, 578 F. Supp. 2d 554, 565 (S.D.N.Y. 2008) (finding plaintiff's exclusion from a staff meeting did not rise to the level of an "adverse employment action" because her "absence from the meeting did not impact the performance of her duties as a secretary, nor did it result in any other material change in the terms and conditions of her

employment.") Here, plaintiffs testified that they had never attended the actuarial meetings, and they believed them to be only for general counsel. Garcia Dep. 78:25–80:19; Bansal Dep. 78:8–80:9. Although they perceived Ms. Sisolak's attendance at these meetings as unfair, plaintiffs fail to proffer any evidence that their exclusion from actuarial meetings, which they never previously attended, materially affected the terms and conditions of their employment. Thus, plaintiffs fail to establish that their exclusion from meetings was an adverse employment action.

### Plaintiff Garcia's Leave Request

Plaintiff Garcia's allegation that Ms. Mazza denied her leave request in order to accommodate Ms. Sisolak also fails to rise to the level of an adverse employment action.[18] See Quadir v. New York State Dep't of Labor, No. 13 CV 3327, 2016 WL 3633406, at *6 (S.D.N.Y. June 29, 2016), aff'd, 691 F. App'x 674 (2d Cir. 2017) (finding no adverse employment action where employee was denied leave in order to spend time prosecuting his case); Figueroa v. New York Health & Hosps. Corp., 500 F. Supp. 2d 224, 230 (S.D.N.Y. 2007) (denying plaintiff's choice of annual leave does not constitute a materially adverse action); Boyd v. Presbyterian Hospital, 160 F. Supp. 2d 522, 537 (S.D.N.Y.2001) ("The particular timing of a vacation is not so disruptive that it crosses the line from 'mere inconvenience' to 'materially adverse' employment action.")

### Plaintiffs' Request for Salary Increases

Plaintiffs also fail to establish that defendants' denial of their requests for salary increases amount to adverse employment actions. Plaintiffs submitted requests for a salary increase comparable to Ms. Sisolak on March 27, 2015 because they discovered Ms. Sisolak was being

---

[18] The Court notes that plaintiff Garcia has put forth no evidence other than her own deposition testimony to support her assertion that Ms. Mazza denied her leave request to accommodate Ms. Sisolak. Garcia Dep. 61:2–62:2; Plaintiffs' 56.1 Counter Statement ¶ 18. Defendants argue that this constitutes hearsay; however, since Ms. Mazza allegedly made the statement directly to plaintiff, the statement could be admissible as a non-hearsay admission of a party opponent. Fed. R. Evid. 801(d)(2). Therefore, I consider the statement.

compensated at a higher salary. See Pls.' Exs. R, S. Ms. Mazza denied plaintiffs' requests for increases and stated that plaintiffs' salaries were commensurate with their duties and experience.

Although the denial of a salary increase can be an adverse employment action, here the denial of plaintiffs' requests did not change the terms or conditions of their employment as plaintiffs failed to demonstrate that they were entitled to an increase in their salaries as a matter of course. See Wilkinson v. New York State, No. 18 CV 4148, 2019 WL 5423573, at *9–10 (E.D.N.Y. Oct. 22, 2019) (finding no adverse employment action in a denial of a salary increase where plaintiff failed to explain how he was entitled to the salary increase); Davis v. N.Y.C. Dep't of Educ., No. 10 CV 3812, 2014 WL 917142, at *7 (E.D.N.Y. Mar. 7, 2014) (internal citation, alteration, and quotation marks omitted), aff'd, 804 F.3d 231 (2d Cir. 2015) (finding no adverse employment action where plaintiff received a reduced bonus as plaintiff cited no facts suggesting that she was entitled to receive a higher bonus). See also Boyar v. City of New York, No. 10 CV 65, 2010 WL 4345737, at *3 (S.D.N.Y. Oct. 28, 2010) ("failure to provide [discretionary pay] does not pass the test for an 'adverse employment action.'").

Here, plaintiffs fail to establish that they were entitled to a salary increase "as a matter of course." Davis, 2014 WL 917142, at *7; Defs.' 56.1 Statement ¶¶ 54–55; Mazza Decl. ¶¶ 25–7. Plaintiffs fail to cite any evidence to support their expectation that they were entitled to an increase in their salaries. Plaintiffs concede that they only requested an increase in their salaries after discovering Ms. Sisolak's salary, not that they were due for a salary increase as a matter of course. Put differently, plaintiffs fail to demonstrate that their expectations for increases in their salaries were based on anything other than learning Ms. Sisolak was paid a higher salary. Plaintiffs also wholly fail to provide any evidence regarding how the terms or conditions of their employment were materially altered following the denial of their requests. While plaintiffs do argue that after

their requests for a salary increase were denied they received less favorable work, receiving less favorable work does not materially alter the terms or conditions of employment. See Felder v. Madison Square Garden, No. 15 Civ. 4038, 2018 WL 1089743, at *4 (S.D.N.Y. Feb. 26, 2018) (finding that receiving less favorable work assignments that do not radically change the nature of the work, and are consistent with the duties of plaintiff's position, and carry with them no diminution in compensation or responsibilities, are insufficient to constitute an adverse employment action). Therefore, plaintiffs fail to establish that the denial of their requests for salary increases was an adverse employment action.

Thus, construing the facts in the light most favorable to plaintiffs, no reasonable jury could find that plaintiffs' allegations constitute adverse employment actions within the meaning of Title VII. Therefore, defendants' motion for summary judgment should be granted on plaintiffs' Title VII race and national origin discrimination claim.

**b. Disparate Pay Under Title VII**

Plaintiffs also fail to establish a *prima facie* case of disparate pay under Title VII. "Disparate-treatment cases present the most easily understood type of discrimination, and occur where an employer has treated a particular person less favorably than others because of a protected trait." Ricci v. DeStefano, 557 U.S. 557, 577 (2009) (internal quotation marks, citations and alterations omitted). To establish a *prima facie* case of disparate pay under Title VII, plaintiffs must demonstrate (1) membership in a protected class, (2) that they were compensated "less than similarly situated non-members" of the protected class and (3) "evidence of discriminatory animus." Thomas v. iStar Fin., Inc., 438 F. Supp. 2d 348, 367 (S.D.N.Y. 2006), aff'd, 629 F.3d 276 (2d Cir. 2010); Quarless v. Bronx-Lebanon Hosp. Ctr., 228 F. Supp. 2d 377, 383 (S.D.N.Y. 2002), aff'd, 75 Fed. Appx. 846 (2d Cir. 2003). "Proof of discriminatory motive is critical" in

disparate treatment claims; however, in some cases, discriminatory animus can be inferred. Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n. 15 (1977).

Here, defendants do not dispute that plaintiffs are members of a protected class. Similarly, defendants do not dispute that plaintiffs were paid less than the non-member of their protected class, Ms. Sisolak. However, defendants argue that plaintiffs were not similarly situated to Ms. Sisolak and that plaintiffs fail to demonstrate an inference of discrimination. See Defs.' Memorandum of Law at 5, 8. Moreover, defendants argue that even if plaintiffs were able to establish a *prima facie* case of disparate pay, there are legitimate, nondiscriminatory reasons for the difference in pay between plaintiffs and Ms. Sisolak. Id. at 10.

I.      *Similarly Situated*

Although defendants argue otherwise, the Court shall assume *arguendo* that plaintiffs were similarly situated to Ms. Sisolak. When relying on evidence of disparate treatment to raise an inference of discrimination, plaintiffs must show that they were similarly situated in all material respects to Ms. Sisolak, whom they compare themselves with. Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003) (quoting Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000)); Simpson v. Metro-North Commuter R.R., No. 04 Civ. 2565, 2006 WL 2056366, at *7 (S.D.N.Y. July 20, 2006) (citing DeJesus v. Starr Technical Risks Agency, Inc., No. 03 Civ. 1298, 2004 WL 2181403, at *9 (S.D.N.Y. Sept. 27, 2004)) ("to be 'similarly situated,' employees must be substantially similar as to specific work duties, education, seniority, and performance history, all of which affect an employee's rate of pay"); Mandell, 316 F.3d at 379 (plaintiff adduced sufficient evidence that comparators were similarly situated where they had similar qualifications and seniority).

Plaintiffs and Ms. Sisolak held the same title, Agency Attorney, Level 3 in 2015. Defs.'

56.1 Statement ¶¶ 11, 27, 40. Moreover, it is undisputed that plaintiffs and Ms. Sisolak shared comparable, if not the same job responsibilities. Specifically, Ms. Mazza declared that as Agency Attorneys, Level 3, plaintiffs and Ms. Sisolak were required to "review legal documents for completeness and legal authority, . . . research pension-related issues, review and respond to Domestic Relations Orders, represent the agency in disciplinary hearings, draft contracts, write reports to agency staff explaining or clarifying legal issues, and maintain NYCERS document retention policy." Mazza Decl. ¶¶ 6, 12, 21. Employment characteristics which can support a finding that two employees are "similarly situated" include "similarities in education, seniority, performance, and specific work duties," DeJesus, 2004 WL 2181403, at *9, and similar requirements for skill, effort and responsibility for jobs performed "under similar working conditions." DeJohn v. Wal–Mart Stores E., LP, 09 Civ. 01315, 2013 WL 1180863, at *6 (N.D.N.Y. Mar. 20, 2013). The Court notes that defendants cite Ms. Sisolak's eight years of pension experience as evidence that Ms. Sisolak was not similarly situated to plaintiffs in all material respects. However, it is undisputed that plaintiff Garcia commenced her employment with NYCERS in 2009, and plaintiff Bansal commenced her employment with NYCERS in 2013. Plaintiff Bansal argues that she was exposed to pension law while she was Counsel for the Office of the Brooklyn Borough President as well as when she was a trustee on the NYCERS Board. Pls.' 56.1 Counterstatement ¶ 28; Mazza Decl. ¶ 13 Thus, viewing the facts in the light most favorable to the non-moving party, plaintiffs had public pension experience that a reasonable jury could find comparable to Ms. Sisolak. Therefore, a reasonable jury could find that plaintiffs were similarly situated to Ms. Sisolak. See Brown v. Daikin Am., Inc., 756 F.3d 219, 230 (2d Cir. 2014) (finding whether two employees are similarly situated is a question of fact for the jury, but the plaintiff bears the burden of proving that the comparator is appropriate); Potash v. Fla. Union Free Sch.

Dist., 972 F. Supp. 2d 557, 580 (S.D.N.Y. 2013); Britt v. Merrill Lynch & Co., Inc., 08 Civ. 5356, 2011 WL 4000992, at *6 (S.D.N.Y. Aug. 26, 2011) (same).

However, as set forth below, plaintiffs fail to establish that the pay differential between plaintiffs and Ms. Sisolak was the result of discriminatory animus.

## II.    Inference of Discrimination

Even assuming plaintiffs were similarly situated to Ms. Sisolak, no reasonable jury could find that plaintiffs have established defendants' discriminatory animus. See Tomka v. Seiler Corp., 66 F.3d 1295, 1313 (2d Cir. 1995), abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998) (finding that plaintiff failed to proffer evidence of discrimination where plaintiff merely relied upon the fact that three men were paid more than she was); Fayson v. Kaleida Health, Inc., 2002 WL 31194559, at *6 (W.D.N.Y. Sept.18, 2002) (holding that a wage disparity, standing alone, was insufficient proof of discrimination). See, e.g., McCullough v. Xerox Corp., 224 F. Supp. 3d 193, 199 (W.D.N.Y. Dec. 14, 2016) ("It is well settled that claims of disparities in pay, without more, are insufficient to demonstrate discriminatory animus[]"); Humphries v. City Univ. of New York, No. 13 Civ. 2641, 2013 WL 6196561, at *7 (S.D.N.Y. Nov. 26, 2013) ("[a] bald allegation that one of Humphries" white colleagues—of unknown years of service, training, or experience—made 20% more than Humphries' starting salary is not enough, standing alone, to raise an inference of discrimination."

Plaintiffs fail to put forth any evidence of defendants' discriminatory animus on account of their race or national origin. Plaintiffs allege that because they and Ms. Sisolak had similar qualifications, their race and national origin must have been the reason for their pay disparity. Bansal Dep. 116:17–117:18; Garcia Dep. 91:9–94:12. Plaintiffs have failed to allege any comments, statements, or actions from Ms. Mazza or anyone else at NYCERS regarding their race

or national origin. Thus, plaintiffs fail to proffer any evidence to support their claims of race or national origin discrimination. While the Court recognizes that direct evidence of racial discrimination is rarely available, Holcomb, 521 F.3d at 137, plaintiffs' assertions that an inference of discrimination exists merely because of a salary difference and their protected class is insufficient. "In the absence of circumstantial evidence of discriminatory animus other than differential treatment, the inference that the difference in treatment is attributable in part to discrimination would be based on speculation rather than on evidence or a rational inference." Setelius v. Nat'l Grid Elec. Servs. LLC, No. 11 CV 5528, 2014 WL 4773975, at *18 (E.D.N.Y. Sept. 24, 2014). Accordingly, as no reasonable jury could find that plaintiffs have established defendants' discriminatory animus, the Court should grant defendants' motion for summary judgment on plaintiffs' Title VII disparate pay claim.

### III.    Legitimate, Nondiscriminatory Reason for Pay Disparity

Even assuming that plaintiffs had made out a *prima facie* case of discrimination regarding their pay disparity claim, defendants have proffered a legitimate, nondiscriminatory reason for the pay disparity between plaintiffs and Ms. Sisolak. Defendants argue that Ms. Sisolak had considerably more experience than plaintiffs when she was hired by NYCERS, including years of public pension experience as well as experience advising attorneys on public pension issues when she worked in the Law Department. According to defendants, Ms. Sisolak was paid a salary that compensated her for her qualifications. Defs.' Memorandum of Law at 10. See Penney v. AIG Domestic Claims, Inc., No. 04 Civ. 9071, 2007 WL 541711, at *11 (S.D.N.Y. Feb. 20, 2007) (noting that defendant's legitimate, nondiscriminatory reason– that plaintiff's salary was set based on his most recent job, his desired salary, his experience, and his qualifications– was supported by the record). See also Humphries, 2013 WL 6196561, at *7 (S.D.N.Y. Nov. 26, 2013) (finding it

22

significant that the plaintiff's salary fell within the posted range for her position.)

The record evidence supports defendants' legitimate, nondiscriminatory reason for the pay disparity. Even giving plaintiffs credit for the years of public pension experience that they accrued while working at NYCERS, their years of experience still fell short of Ms. Sisolak's experience. Moreover, albeit at the top, it is undisputed that Ms. Sisolak's salary was within the range for an Agency Attorney, Level 3. While plaintiffs argue that most of Ms. Sisolak's pension experience involved "pending litigation" and that public pension experience was only a "preferred skill" and not a requirement for an Agency Attorney, Level 3, this Circuit has consistently found that experience and qualifications are legitimate, nondiscriminatory reasons to compensate employees differently. See Kaye v. Storm King School, 11 CV 3369, 2015 WL 5460107, *10 (S.D.N.Y. June 8, 2015) (finding education, years of experience, and years of service legitimate, nondiscriminatory reasons for discrepancies in salary); Warren v. N. Shore Univ. Hosp. at Forest Hills, No. 03 CV 0019, 2006 WL 2844259, at *12 (E.D.N.Y. Sept. 29, 2006), aff'd, 268 F. App'x 95 (2d Cir. 2008) (finding seniority and experience legitimate, nondiscriminatory reasons for salary differential); Fleary v. State of New York Mortg. Agency, 04 CV 1557, 2006 WL 335701, *9 (E.D.N.Y. Feb. 13, 2006) (same). See generally Dhar v. N.Y.C. Dep't of Transp., 630 Fed. Appx. 14, 15–16 (2d Cir. 2015) (summary order) ("claims of pay discrimination and denial of promotion opportunities fail[ed] because the defendants had a legitimate and non-discriminatory reason for the differences in salaries and promotions between [plaintiff] and his comparators, and [plaintiff] failed to present any evidence that their legitimate reason—differing education and experience—was pretextual").

IV.    *Pretext*

Plaintiffs fail to establish that defendants' legitimate, nondiscriminatory reason for the pay disparity between their pay and Ms. Sisolak was merely pretext for discrimination. As defendants have offered a legitimate, nondiscriminatory reason for the pay disparity between plaintiffs and Ms. Sisolak, plaintiffs must now "demonstrate by competent evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Leibowitz, 584 F.3d at 498–99 (quotation omitted). "[I]f the plaintiff has failed to show that there is evidence that would permit a rational factfinder to infer that the employer's proffered rationale is pretext, summary judgment dismissing the claim is appropriate." Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 221 (2d Cir. 2004) (citation omitted).

Even assuming plaintiffs established a *prima facie* case of discriminatory disparate pay, plaintiffs must still show that defendants' legitimate, nondiscriminatory reason is a pretext for discrimination. Plaintiffs fail to meet this burden. Plaintiffs assert that defendants legitimate, nondiscriminatory  reason is a pretext because it contradicts past practices of paying incoming attorneys the incumbent rate for their title. Pls.' Mem. of Law at 19. Plaintiffs posit that each time plaintiff Garcia was promoted, she was promoted at the incumbent rate. Plaintiff Garcia testified that when she inquired about her salary with a former Deputy General Counsel, she was told that attorneys are only paid at the incumbent rate. Plaintiff Garcia testified that when interviewing attorneys with Ms. Mazza, Ms. Mazza told an Asian male that the salary would be the incumbent rate. Similarly, plaintiff Bansal testified that she asked for a higher salary when she was hired, and Ms. Mazza told her that she could not earn more than plaintiff Garcia, who was receiving the incumbent rate. Pls.' Mem. of Law at 19–20.

Plaintiffs, in sum, assert that NYCERS had only hired attorneys at the incumbent rate and

thus NYCERS departed from their practice when Ms. Sisolak was hired. While the Court notes that an employer's substantial departure from a policy, practice, or procedure could be considered pretext, in this case, without more, plaintiffs fail to establish that the reason for Ms. Sisolak's higher salary was a pretext for discrimination based on plaintiffs' race or national origin. See Chen v. Suffolk Cty. Cmty. Coll., 2017 WL 2116701, at *12 (E.D.N.Y. Mar. 31, 2017) aff'd 734 F. App'x 773 (2d Cir. 2018) (noting that departures from procedure, without more, do not show that an employer was motivated by racial discrimination). See also Desir v. Bd. of Co-op. Educ. Servs. (BOCES) Nassau Cty., 803 F. Supp. 2d 168, 177 (E.D.N.Y. 2011) ("In certain circumstances, procedural irregularities may form a basis to infer discriminatory animus or pretext . . . . However, departures from established procedure[s] do not show, without more, that an employer was animated by racial discrimination." (citations omitted)), aff'd, 469 Fed. Appx. 66 (2d Cir. 2012); Davis v. Peake, 08 Civ. 3570, 2011 WL 4407551 at *9 (S.D.N.Y. Sept. 20, 2011) ("While Plaintiff seems to argue that Defendant's alleged departure from procedures is indicative of pretext, a plaintiff must still produce evidence that defendant's reason, 'even if pretextual' was a pretext for discrimination."), aff'd, 505 Fed. Appx. 67 (2d Cir. 2012); Albury v. J.P. Morgan Chase, 03 Civ. 2007, 2005 WL 746440 at *9 (S.D.N.Y. Mar. 31, 2005) ("A violation of an employer's internal personnel practices is not, by itself, an act of discrimination.")

Therefore, even assuming that NYCERS normally hired Agency Attorneys at the incumbent rate, plaintiffs fail to advance any evidence that defendants' legitimate, nondiscriminatory reason for hiring Ms. Sisolak at a higher salary, her experience and qualifications, were a pretext for race and national origin discrimination. Therefore, even assuming plaintiffs established a *prima facie* case of disparate pay, defendants' motion for summary judgment should be granted as plaintiffs fail to establish pretext.

### c. Plaintiff Bansal's Exhaustion of Administrative Remedies

Defendants argue that the Court must dismiss plaintiff Bansal's retaliation claim based on her race and national origin for failure to exhaust available administrative remedies. Defs.' Mem. of Law at 17–18. Plaintiffs argue that plaintiff Bansal's retaliation claim is reasonably related to the claims in plaintiff Bansal's EEOC charge of discrimination. Pls.' Mem. of Law at 21–23. The Court agrees.

Plaintiff Bansal's retaliation claim is reasonably related to her administrative charge filed with the EEOC. Title VII requires an individual seeking to file suit to first present the claims forming the basis of such suit in a complaint to the EEOC or the equivalent state agency. See Williams v. N.Y.C. Hous. Auth., 458 F.3d 67, 69 (2d Cir. 2006) (per curiam) (citing 42 U.S.C. § 2000e-5) (Title VII exhaustion requirement).

A claim that was not presented to the EEOC may nevertheless be pursued in court if the claim is "reasonably related" to the claims brought before the agency. Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 273 F.3d 683, 686 (2d Cir. 2001); Holtz, 258 F.3d at 82–83. A "claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can be reasonably expected to grow out of the charge that was made." Williams, 458 F.3d at 70. The focus of this inquiry is on the factual allegations made in the EEOC charge itself and whether those allegations gave the EEOC adequate notice to investigate discrimination on each basis now alleged. Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir. 2003). Therefore, "claims that introduce a 'wholly different type of discrimination' from that in the administrative charge are typically deemed to be not reasonably related." Young v. U.S. Dep't of Homeland Sec., No. 10 Civ. 9571, 2011 WL 6057849, at *2 (S.D.N.Y. Dec. 5, 2011) (quoting Gutierrez v. City of New York, 756 F. Supp. 2d 491, 499 (S.D.N.Y. 2010)). When deciding

whether a claim is reasonably related, the substance of the charge governs, not the label. Deravin, 335 F.3d at 201. Ultimately, this inquiry focuses on whether the "the factual underpinnings" of the subsequent claim were presented in the prior charge and whether the initial charge gave the agency notice to investigate the case on bases contained in both the initial complaint and the subsequent civil action. Williams, 458 F.3d 67, 70–71.

Here, plaintiff Bansal's EEOC complaint alleges a series of actions that began after she requested her salary increase. See Pls.' Exs. FF, GG. Specifically, after requesting a salary increase, plaintiff Bansal alleges, "I saw a change in the work I received . . . I stopped receiving any high visibility or high profile assignments . . . Ms. Garcia and I were ignored and excluded from any discussions about legal matters or policies in the unit . . . [and] Ms. Garcia and I were . . . excluded from training events, managerial meetings, and actuarial meetings." Id. While plaintiff Bansal did not check the box alleging retaliation, plaintiff Bansal plead facts in her EEOC charge of discrimination that put the EEOC on notice of potential retaliatory conduct. "It is well-settled that merely checking a box, or failing to check a box does not necessarily control the scope of the charge." See Cooper v. Xerox Corp., 994 F. Supp. 429, 436 (W.D.N.Y. 1998). See also Reyes v. City College of the City University of New York, 2005 WL 2990637, at *4 (S.D.N.Y. 2005) (same); Ausfeldt v. Runyon, 950 F. Supp. 478, 486 (N.D.N.Y. 1997) (same). Rather, "when the EEOC charge alleges facts from which a reader can infer a link between [the] protected activity—for example, a complaint about perceived discriminatory treatment—and a subsequent adverse employment action, a retaliation claim asserted in a subsequent lawsuit will be [deemed] "reasonably related" to the EEOC charge." Morris v. David Lerner Assocs., 680 F. Supp. 2d 430, 438 (E.D.N.Y. 2010) (collecting cases); Jenkins v. N.Y. City Transit Auth., 646 F. Supp. 2d 464, 472–73 (S.D.N.Y. 2009) (collecting cases demonstrating "reasonably related" exception requires

facts supporting retaliation, rather than check the box formalism). Thus, the Court should consider plaintiff Bansal's retaliation claim as it was reasonably related to her administrative charge filed with the EEOC.

### d. Retaliation

Nonetheless, plaintiffs have failed to establish a *prima facie* claim of retaliation. Title VII provides that it shall be unlawful to discriminate against any employee because the employee has opposed any practice made an unlawful employment practice by Title VII. 42 U.S.C. § 2000e–3(a). Similar to employment discrimination claims, Title VII retaliation claims are analyzed under the McDonnell Douglas burden-shifting model. Zann Kwan, 737 F.3d at 843. To establish a *prima facie* claim of retaliation, plaintiffs must show: (1) that they participated in a protected activity; (2) that their employer knew of the protected activity; (3) that they suffered an adverse employment action; and (4) that a causal connection exists between plaintiffs' protected activity and the adverse employment action. See Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006); Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005); Gordon v. New York City Bd. of Educ., 232 F.3d 111, 113 (2d Cir. 2000). Protected activity includes actions taken to report, oppose or protest unlawful discrimination, including complaints of discrimination to the employer, and the filing and pursuit of administrative charges. See Cruz v. Coach Stores Inc., 202 F.3d 560, 566 (2d Cir. 2000). If plaintiffs make out a *prima facie* case of retaliation, the burden shifts to defendants to demonstrate that there was a légitimate, non-retaliatory reason for its actions. If defendants meet this burden, the burden returns to plaintiffs to show that "there is sufficient potential proof for a reasonable jury to find the proffered legitimate reason merely a pretext for impermissible retaliation." Gallagher v. Delaney, 139 F.3d 338, 348 (2d Cir. 1998)).

Plaintiffs' allege that their requests for a salary increase and plaintiff Garcia's complaint to

HR employee, Ms. Ebanks, were sufficient to constitute protected activities. Pls.' Mem. of Law at 24–26. On March 27, 2015, plaintiffs sent separate letters to Ms. Mazza requesting a salary increase on par with another Agency Attorney, Level 3. In their letters, plaintiffs outlined their responsibilities, qualifications, and assignments that they believed warranted an increase in their salaries. Pls.' Exs. R, S. Ms. Mazza met with both plaintiffs separately and denied their requests. Ms. Mazza advised plaintiffs that their salaries were commensurate with their job duties and responsibilities. Mazza Decl. ¶¶ 26–29. Neither plaintiff complained that their requests were denied because of their race or national origin or that Ms. Sisolak was paid a higher salary based on unlawful discrimination. Indeed, plaintiffs' emails to their union representative never mentioned race or national origin as a reason for the pay disparity. See Bansal Dep. 89:4–92:15.[19] Plaintiffs admit that the only mention of discrimination was in plaintiff Bansal's exit interview form. See Pls.' Ex. J, Plaintiff Bansal's Exit Interview Form. Plaintiffs' allegations of retaliation are therefore insufficient to establish protected activities under Title VII. See Soliman v. Shark Inc., No. 00 Civ. 9049, 2004 WL 1672458, at *4 (S.D.N.Y. July 27, 2004) (summary judgment granted on plaintiff's retaliation claim where the record failed to show that plaintiff's complaints about his salary were based on race); Jones v. New York City Health & Hosp. Corp., No. 00 Civ. 7002, 2003 WL 30412, at *4 (S.D.N.Y. Jan. 3, 2003), aff'd sub nom. Jones v. New York City Health & Hosps. Corp., 102 F. App'x 223 (2d Cir. 2004) (plaintiff's complaints about her salary failed to constitute a protected activity where plaintiff never suggested that her salary was low as a function of her gender). See also Bruder v. Jewish Bd. of Family & Children's Servs., No. 10

---

[19] The Union representative stated that if plaintiffs believed this was an EEO matter, they could file an EEO complaint with either their agency or the State Division of Human Rights. Plaintiff Garcia stated that she never used the word discrimination because she believed if she used the word, defendants would treat her worse than they already were. Pls.' Mem. of Law at 30. However, as plaintiff Garcia was defendants' EEO officer, she would know how to pursue a complaint regarding discrimination. Cf. Littlejohn v. City of N.Y., 795 F.3d 297, 319 (2d Cir. 2015) (finding an EEO director engaged in protected activity when she conveyed others' complaints of discriminatory policies and unlawful discrimination during meetings.)

CV 5951, 2013 WL 789231, at *8 (E.D.N.Y. Mar. 4, 2013) (finding plaintiff offered no evidence that she complained about discrimination and thus did not engage in a protected activity); Kearney v. ABN AMRO, Inc., 738 F. Supp. 2d 419, 431 (S.D.N.Y. 2010) (finding the plaintiff had not engaged in protected activity, even though she complained that her salary was insufficient, because she did not complain that she was being paid insufficiently because of her age or gender); Garrett v. Garden City Hotel, Inc., No. 05 Civ. 962, 2007 WL 1174891, at *20 n. 18 (E.D.N.Y. Apr. 19, 2007) (dismissing ADEA retaliation claim because "plaintiff fail[ed] to allege or to argue that she related any of her complaints to age-based discrimination").

Moreover, although plaintiff Garcia may have complained about unfair treatment to Ms. Ebanks, plaintiffs proffer no evidence that their complaints were ever linked to their race or national origin. "To qualify as protected activity, a plaintiff must clarify to the employer that he is complaining of unfair treatment due to his membership in a protected class and that he is not complaining merely of unfair treatment generally." Chauhan v. MM Hotel Mgmt. LLC, No. 18 CV 5963, 2019 WL 6118006, at *9 (E.D.N.Y. Nov. 18, 2019) (quoting Sletten v. LiquidHub, Inc., No. 13 Civ. 1146, 2014 WL 3388866, at *5 (S.D.N.Y. July 10, 2014)) (internal quotations and citations omitted); Hanfland v. Brennan, 2015 WL 6134177, *11 (W.D.N.Y. 2015) (citation omitted) ("The onus is on the speaker to clarify to the employer that he is complaining of unfair treatment due to his membership in a protected class and that he is not complaining merely of unfair treatment generally."); Lehman v. Bergmann Assocs., Inc., 11 F. Supp. 3d 408, 417–18 (W.D.N.Y. 2014) (finding a plaintiff must allege discrimination to their employer in "sufficiently specific terms so that the employer is put on notice that the plaintiff believes he or she is being discriminated against on the basis of race . . . or any other characteristic protected by Title VII.") (citation omitted). Plaintiffs have failed to establish that their requests for a salary increase and

plaintiff Garcia's complaints to Ms. Ebanks constituted protected activity, and thus the Court should grant defendants' motion for summary judgment on plaintiffs' retaliation claim.[20]

### e. Constructive Discharge

As an initial matter, it is unclear whether plaintiffs have exhausted their administrative remedies regarding a constructive discharge claim. In any event, neither party has briefed the issue and even if plaintiffs did exhaust their administrative remedies, plaintiffs fail to proffer sufficient evidence to establish they were constructively discharged.

To state a claim for constructive discharge under Title VII, a plaintiff must allege that his "employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily." Ashcroft, 336 F.3d at 151–52 (2d Cir. 2003). The Supreme Court explained that a constructive discharge claim consists of "two basic elements." Green v. Brennan,136 S. Ct. 1769, 1777 (2016). First, plaintiffs must prove "[they] [were] discriminated against by [their] employer to the point where a reasonable person in [their] position would have felt compelled to resign." Id. (citation omitted). Second, "[plaintiffs] must also show that [they] actually resigned." Id.

Plaintiffs allege they were constructively discharged as NYCERS created unpleasant working conditions by showing extreme favoritism to Ms. Sisolak— paying plaintiffs a significantly lower salary than Ms. Sisolak, giving Ms. Sisolak her own office, denying plaintiffs' requests for salary increases, giving Ms. Sisolak high level assignments, and excluding plaintiffs

---

[20] Even assuming plaintiffs engaged in a protected activity, they fail to allege that defendants took any adverse employment actions against them. The monitoring and criticisms of plaintiffs' work; allegedly rude emails from Ms. Mazza to plaintiff Garcia; an email from Ms. Allende to plaintiff Bansal; and failure to include plaintiffs in meetings and trainings are insufficient to establish adverse employment actions. See, e.g., Dhar, 2014 WL 4773965, at *13 (finding that assigning plaintiff to work in a certain environment was nothing more than merely annoying even under the less stringent retaliation standard); Setelius, 2014 WL 4773975, at *8 (finding that denying training to employee was not an adverse employment action even under more inclusive standard for retaliation claims); Nicastro v. Runyon, 60 F. Supp. 2d 181, 186 (S.D.N.Y.1999) (excessive scrutiny from supervisors could not support a Title VII retaliation claim).

from meetings— in order to humiliate plaintiffs. Pls. Mem. of Law at 33. Plaintiff Garcia also cites that Ms. Sisolak required her to complete all of her remaining tasks before Ms. Sisolak would review her leave request, which prompted plaintiff Garcia to advance her resignation date. See Mem. of Law at 34; Garcia Dep. 111:10–112:25; Pls.' Ex. Y; Defs.' 56.1 Statement ¶¶ 90–94.

In sum, plaintiffs' constructive discharge claim relies on the same facts which the Court has found insufficient to establish their claim of discrimination. See Steston v. Nynex Service Co., 995 F.2d 355, 361 (2d Cir. 1993) (finding plaintiff's dissatisfaction with his assignments, compensation, and criticisms of his work insufficient to support an inference that the conditions were so difficult or unpleasant that he was forced to resign); Chan v. NYU Downtown Hosp., No. 03 Civ. 3003, 2006 WL 345853, at *10 (S.D.N.Y. Feb. 14, 2006) ("Neither plaintiff's dissatisfaction with her salary and work assignments, nor her allegations that defendants ignored her complaints, nor the 'slights' of co-workers and supervisors can be said to have made her job objectively 'objectively' intolerable"). See also Lehman, 11 F. Supp. 3d at 415–16 (finding that plaintiff being forced to take a less prestigious position and occasionally ostracized from important corporate decisions did not raise a reasonable inference that plaintiff was forced to resign). While plaintiffs were dissatisfied with how they were being treated at work, plaintiffs have failed to establish that they were forced to resign from their positions. Thus, the Court should grant defendants' motion for summary judgment on plaintiffs' constructive discharge claim.

## CONCLUSION

Whereas Ms. Garcia and Ms. Bansal have established that defendants did not treat them as they believed they should have been treated after their years of service to the agency, they have failed to establish discrimination or retaliation. Accordingly, the Court should grant defendants' motion for summary judgment on plaintiffs' claims of discrimination on the basis of race or

32

national origin, as well as their claims of retaliation. Likewise, the Court should grant defendants' motion for summary judgment on plaintiffs' constructive discharge claim.

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court.  Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/S/ Judge Lois Bloom

LOIS BLOOM
United States Magistrate Judge

Dated: February 24, 2020
        Brooklyn, New York